FILED

2004 Dec-14  PM 03:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHWESTERN DIVISION**

| | |
|---|---|
| **DEBORAH J. AUSTIN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )        **CV 03-B-0999-NW** |
| | ) |
| **S O U T H E R N   A C C O U N T I N G** | ) |
| **SYSTEMS, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

**<u>MEMORANDUM OPINION</u>**

This case is presently pending before the court on defendant's Motion for Summary Judgment. (Doc. 15.)[1] Plaintiff Deborah J. Austin has sued her former employer, defendant Southern Accounting Systems, Inc., alleging that it discriminated against her on the basis of her gender with regard to her pay and that it fired her in retaliation for her complaints of discrimination, in violation of federal law. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 15), is due to be granted in part and denied in part.

**I.  <u>SUMMARY JUDGMENT STANDARD</u>**

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* at 249.  Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in her favor. *See id.* at 255.  Nevertheless, the non-moving party need not be given the benefit of every inference but only of every ***reasonable*** inference.  *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II.  STATEMENT OF FACTS

Defendant sells printed business forms and accounting systems.  (Doc. 15, Ex. A ¶ 2.) Its sales force is divided into two divisions:  the In-House Division and the School Division.

(*Id.* ¶ 3.)  At all times relevant to this decision, defendant employed five full-time Sales Representatives in the two Divisions:

(1)    Plaintiff, female, In-House Division Sales Representative;

(2)    Russ Adair, male, School Division Sales Representative for North Carolina and South Carolina;

(3)    Robbie Richardson, male, School Division Sales Representative for Florida, Georgia, and Tennessee;

(4)    Lee Wilson, male, School Division Sales Representative for Texas;

(5)    Carolyn Wright, female, In-House Division Sales Representative.

(*Id.* ¶¶ 4-5; *see also* doc. 20, Ex. 4 at PL035.)

Defendant hired plaintiff in 1998.  (Doc. 15, Ex. K.)  Plaintiff's comparators, for purposes of this case, are the three male full-time Sales Representatives who worked in the School Division – Russ Adair, Robbie Richardson, and Lee Wilson.  Adair was hired in 1996; Richardson was hired in 1993; and Wilson was hired in 2000.  (Doc. 15, Ex. B ¶ 2; doc. 20, Ex. 1 at PL020 and Ex. 10 at PL017.)

The Sales Representatives in the School Division travel extensively, often away from home for three or more days a week.  (Doc. 15, Ex. A ¶ 6; *id.*, Ex. B ¶ 4; doc. 20 at 90.)  They normally worked more than 40 hours per week.  (Doc. 20, Ex. 4 at PL037.)  Most of their sales were made in person to educational institutions.  (Doc. 15, Ex. A¶ 6; *id.*, Ex. B ¶¶ 3-4.)  They produced over 70% of defendant's new business sales.  (*Id.*, Ex. B ¶ 10.)  They were required "[to] strictly comply with detailed reporting requirements that included, among other things, giving detailed reports of each and every contact and communication that [they]

3

made on and with [their] customers and providing [their supervisor] on a monthly basis updated lists containing data about [their customers.]   (*Id.*)   The School Division Sales Representatives had sales quotas and established "minimum requirements related to the number of contacts/calls [they] made on customers."   (*Id.*)   The School Division Sales Representatives often worked from home offices, and they absorbed the costs of operating their home offices, as well as their travel expenses over their overnight per diem and car/expense allowances paid by defendant.   (*Id.* ¶¶ 5-6, 11; *id.*, Ex. A ¶ 6.)

The Sales Representatives in the In-House Division did not travel extensively; they rarely traveled more than 100 miles from the office.   (*Id.*, Ex. A ¶ 6.)   They normally worked 40 hours per week.   (Doc. 20, Ex. 4 at PL037.)   They produced less than 30% of defendant's new business sales.   (*Id.*, Ex. B ¶ 10.)   They did not have sales quotas; however, they had established sales goals, which, if met, resulted in the payment of a bonus. (*See* doc. 20, Ex. 4 at PL037; *id.*, Ex. 5.)   They worked out of offices provided by defendant and were not responsible for any overhead expenses.   (*Id.*, Ex. 4 at PL037.)   However, they were required to absorb travel expenses over their car allowance and overnight per diem.

Beginning January 1, 2002, plaintiff was paid (1) a 10% commission of her total sales; (2) an additional 10% commission of her new business sales; and (3) a $200 monthly car allowance and $80 overnight per diem.   (Doc. 15, Ex. C at 22.)

At the same time, Richardson was paid (1)  a 12% commission on his total sales; (2) an additional 10% commission of his new business sales; (3) 80% of any installation fees; and (4) a $400 monthly car allowance and $80 overnight per diem.   (Doc. 15, Ex. B ¶ 11.)

4

Wilson was paid (1) $2,000 per month or a 15% commission of his total sales, whichever was greater; (2) no additional commission of his new business sales; (3) 80% of any installation fees; and (4) a $400 monthly expense allowance and $80 overnight per diem. (Doc. 20, Ex. 10.)

Adair was paid (1) $3,000 per month or 15% commission of his total sales, whichever was greater; (2) no additional commission on his new business sales; (3) no commission on installation fees; and (4) a $350 monthly expense allowance and $80 overnight per diem. (*Id.*, Ex. 1 and Ex. 4 at PL035.)

Robert Joiner, defendant's owner and CEO, testified that the "main reasons" he chose to pay Wilson and Adair a commission of 15% while he paid plaintiff and Wright a commission of only 10% were:

> . . . School reps have quotas and more requirements to meet, work out of their home[s] and are expected to cover their expenses such as phone, utilities, any equipment needed.
>
> . . .
>
> [They are] [r]equired to work outside on the road and have guidelines for number of direct calls to make, et cetera. Have to make overnight stays during the course of their regular week. Due to the nature of requirements set forth, the School Rep will normally put forward more than the standard 40-hour work week – 40 hours work during the week. The In-House Reps do not have set quotas to meet and have less requirements/responsibilities to meet. They work in the company office, with the company paying for phone, utilities, supplies used, et cetera. And no set requirements for outside work, and they spend most of their time working inside the office provided to them. Hours worked during the week normally consist of the standard 8:30 a.m. to 4:30 p.m. day (40 hours a week).

(Doc. 20 at 89-90 (quotations omitted) and *see also id*., Ex. 4 at PL037.)

Plaintiff testified that Pam Doyle, defendant's In-House Marketing Director, told her that female sales representatives were paid less than male sales representatives. (Doc. 15, Ex. C at 84; *id.*, Ex. D at 44.) On three or four occasions, plaintiff asked Joiner whether the female sales representatives in the In-House Division were being paid less than the male sales representatives in the School Division. (Doc. 15, Ex. A ¶ 2; doc. 18, Ex. D at 79-80.) He told her "it was none of [her] business and none of [her] concern." (Doc. 15, Ex. C at 114.) On the second or third time she asked him about the disparity in wages, Joiner told plaintiff "that he wouldn't discuss it anymore with [her] and that if [she] did discuss it, that [she] could look for [her] another job." (Doc. 18, Ex. D at 80; *see also* doc. 15, Ex. H.)

After the change in her pay structure, plaintiff's sales of buyout products and new business declined. (Doc. 20 at 16-23.) Joiner testified that he decided to terminate plaintiff "[b]asically for market loss, and . . . she was not generating any new business." (Doc. 20 at 16-17.) Defendant has produced a chart purporting to show "Total Orders and Buyout Figures: Deborah Austin." (*Id.*, Ex. 2.) However, the chart includes figures from January-July of 2001, 2002, and 2003. (*Id.*) Indeed, the lowest figures are noted in June 2002, the month following plaintiff's termination. (*Id.*) Also, contrary to Joiner's testimony that plaintiff "was not generating any new business," (doc. 20 at 17), Exhibit 3 to his deposition indicates that prior to her termination she was producing at least some new business, (doc. 20, Ex. 3).

The record does not contain comparable documentation for the other full-time Sales Representatives. However, Joiner testified that Richardson did not have a market loss or

decline in new business during the Spring of 2002.  (Doc. 20 at 25.)  He testified that he was

"not sure" if Adair or Wright had a market loss, that he was not sure if Adair had a decline

in new business, and that Wright had a decline in new business of 6%-7% in the Spring of

2002.  (*Id.* at 24-26.)  He did not offer any testimony regarding Wilson's performance during

the Spring of 2002.

Joiner terminated plaintiff on May 22, 2002.  (Doc. 20 at 16, 20.)  She filed a charge

of Discrimination with the EEOC on September 10, 2002.  (Doc. 15, Ex. K.)

## III.  DISCUSSION

### A. DISCRIMINATORY PAY CLAIMS – EPA AND TITLE VII

Plaintiff argues that she was paid a 10% commission while working in the In-House

Division while the three male Sales Representatives working in the School Division were

paid a 12% or a 15% commission on their sales for defendant.  She contends that this

disparity in pay violates the Equal Pay Act ["EPA"] and Title VII.

### 1.  Equal Pay Act

The Equal Pay Act was enacted in 1963 as part of the minimum wage law.  *See* 29

U.S.C. § 206(d).  The Act provides:

> No employer having employees subject to any provision of this section
> [the minimum wage law] shall discriminate, within any establishment in which
> such employees are employed, between employees on the basis of sex by
> paying wages to employees in such establishment at a rate less than the rate at
> which he pays wages to employees of the opposite sex in such establishment
> for equal work on jobs the performance of which requires equal skill, effort,
> and responsibility, and which are performed under similar working conditions,
> except where such payment is made pursuant to (i) a seniority system; (ii) a
> merit system; (iii) a system which measures earnings by quantity or quality of

7

production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

*Id.*

In order to make out a prima facie case under the EPA, plaintiff must show that defendant paid different wages to employees of opposite sexes for equal work on jobs the performance of which required equal skill, effort, and responsibility, and which were performed under similar working conditions. *Id.*; *see also Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974); *Glenn v. General Motors Corp.*, 841 F.2d 1567, 1568 (11th Cir. 1988).

Both plaintiff and her comparators are full-time Sales Representatives; however, their jobs are not "equal" under the EPA.  The School Division Sales Representatives worked longer hours and did not enjoy many of the company-provided overhead benefits enjoyed by the In-House Division Sales Representatives.  They had certain reporting requirements that the In-House Division Sales Representatives did not, and they had established sales quotas. The School Division Sales Representatives worked outside the office and traveled extensively; the In-House Division Sales Representatives worked in defendant's office and rarely traveled more than 100 miles from that office.

The court finds that plaintiff has not shown that her work as an In-House Division Sales Representative is ***equal*** to the work of a School Division Sales Representative.

Therefore, plaintiff cannot establish an EPA claim, and defendant's Motion for Summary Judgment as to plaintiff's EPA claim will be granted.

### 2. Title VII

#### a. Timeliness

Defendant contends that plaintiff's Title VII pay claim is time-barred because the pay system was changed as of January 1, 2002, but plaintiff did not file her EEOC charge until September 2002, some nine months later.

The Supreme Court has held that a plaintiff is barred from asserting judicial claims under Title VII as to any discrete employment act that occurred more than 180 prior to the date plaintiff files her EEOC charge. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).   However, "[e]ach . . . paycheck that delivers less to a [woman] than to a similarly situated [man] is a wrong actionable under Title VII, regardless of the fact that this pattern was begun prior to [180 days before plaintiff filed her EEOC charge.] *Bazemore v. Friday*, 478 U.S. 385, 395-396 (1986)(per curium with Brennan, J., concurring in part, joined by all other Members of the Court), *quoted in Carter v. West Pub. Co.*, 225 F.3d 1258, 1264 (11th Cir. 2000)(also quoting *Calloway v. Partners National Health Plans*, 986 F.2d 446, 448 (11th Cir. 1993)).   Therefore, plaintiff's Title VII claims are timely as she received a paycheck, a discrete act, within 180 days of the date she filed her EEOC charge.

#### b. *McDonnell Douglas*

As an alternative ground for dismissing plaintiff's Title VII pay claims, defendant argues:

a. [Plaintiff] is unable to make out a prima facie case of discrimination in pay under Title VII because she is unable to produce substantial evidence, direct or circumstantial:

    i. that the pay of her comparators was more favorable than her pay (this is especially so with respect to Adair and Wilson, neither of whom were paid any commissions on new business); and/or

    ii. that the job she occupied was similar to that of her comparators;

b. Even if [plaintiff] does establish a prima facie case of such discrimination:

    i. [Defendant] had carried its burden of producing evidence of legitimate, non-discriminatory reasons for the differences in pay, *Miranda*, 975 F.2d at 1528-29 (*inter alia*, noting that the affirmative defenses of the EPA have been incorporated into Title VII); and/or

    ii. [Plaintiff] cannot produce substantial evidence of an *actual* intent to discriminate against her on the basis of sex. *Butler v. Albany International*, 273 F. Supp. 2d 1278, 1286-88.

(Def. Br. in Supp. of Mot. for Summ. J. at 16.)

The Eleventh Circuit has held that "the *McDonnell Douglas/ Burdine* approach to disparate treatment is the appropriate framework for evaluating . . . [a] claim of gender-based wage discrimination." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1528 (11th Cir. 1992).

*McDonnell Douglas* and subsequent decisions have established an allocation of the burden of production and an order for the presentation of proof in ... discriminatory-treatment cases. First, the plaintiff must establish a prima facie case of discrimination. . . . The burden [then] shift[s] to [the defendant] to produce evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. This burden is one of production, not persuasion; it can involve no credibility assessment. [When the defendant offers] admissible evidence sufficient for the trier of fact to conclude that [the plaintiff] was fired [for a legitimate, nondiscriminatory

reason], the *McDonnell Douglas* framework – with its presumptions and burdens – disappear[s], and the sole remaining issue [is] discrimination vel non . . . .

Although intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. And in attempting to satisfy this burden, the plaintiff – once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision – must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence.

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142-43 (2000)(internal citations and quotations omitted).

### i. Prima Facie Case

"The plaintiff establishes a prima facie case of sex discrimination [with regard to her pay] under Title VII by demonstrating that she is female and that the job she occupied was similar to higher paying jobs occupied by males." *Miranda*, 975 F.2d at 1529. "To show that she performed a similar job as her [male] co-workers, Plaintiff must show *only* that 'she shared the same type of tasks' as her alleged comparators." *Cooper v. Southern Co.*, 260 F. Supp. 2d 1317, 1330 (N.D. Ga. 2003)(quoting *Miranda*, 975 F.2d at 1529)(emphasis added).

The court finds that plaintiff and the male School Division Sales Representatives performed similar jobs as they performed "the same type of tasks." Therefore, for purposes of establishing a prima facie case of discrimination with regard to her pay, the

court finds that plaintiff and the male School Division Sales Representatives are proper comparators.

In addition to arguing that plaintiff's job is not similar to that of the male School Division Sales Representatives, defendant contends that plaintiff cannot establish that her pay was less favorable than that of her comparators.  To establish a prima facie case of discrimination, plaintiff need only "show[ ] that [she] has been discriminated against in terms of pay vis-a-vis one employee of the opposite sex."  *Brock v. Georgia Southwestern College*, 765 F.2d 1026, 1033 n.10 (11th Cir. 1985).  The evidence is undisputed that two of the three male School Division Sales Representatives – Adair and Wilson – were paid a 15% commission on their sales; the other – Richardson – was paid a 12% commission with an additional 10% commission on new business.  Clearly, plaintiff has established that her rate of pay – 10% commission on all sales and an additional 10% on new business – is less favorable than Richardson's rate of pay.[2]

The court finds that the evidence supports a finding that plaintiff was paid less

---

[2]The court notes that defendant, the party moving for summary judgment, has not presented any evidence that Adair and Wilson's actual pay was less favorable than plaintiff's pay because they did not receive an additional commission on new business nor has it produced evidence that plaintiff will not be able to show that her pay was less favorable that the pay received by Adair and Wilson. *See Celotex Corp.*, 477 U.S. at 325; *Coats & Clark, Inc.*, 929 F.2d at 607.  Therefore, defendant has not carried its burden on its Motion for Summary Judgment with regard to whether Adair and Wilson were treated more favorably than plaintiff.  However, as the court has noted, to establish her prima facie case, plaintiff need only establish that she was treated less favorably than one male employee.

than a similarly-situated male employee.  Therefore, the court finds that plaintiff has established a prima facie case of pay discrimination.

### ii.  Articulated, Non-Discriminatory Reason and Pretext

Defendant contends, "[Defendant] does not deny that differences existed in the pay structures of [plaintiff], Richardson, Adair, and Wilson.  However, it is the position of SAS that these differences existed as a result of [the differences between the job of Sales Representative in the School Division and in the In-House Division.]"  (Def. Br. in Supp. of Mot. for Summ. J. at 7.)  It contends that plaintiff "cannot produce substantial evidence of an *actual* intent to discriminate."  (*Id.* at 16.)

The law is well established that "[a] plaintiff may prevail on an employment discrimination claim by either proving that intentional discrimination motivated the employer or producing sufficient evidence to allow a rational trier of fact to disbelieve the legitimate reason proffered by the employer, which permits, but does not compel, the trier of fact to find illegal discrimination."  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004)(citing *Reeves*, 530 U.S. at 147-48; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *Abel v. Dubberly*, 210 F.3d 1334, 1336 (11th Cir. 2000); *Alexander v. Fulton County*, 207 F.3d 1303, 1336 (11th Cir. 2000)). Therefore, the issue is whether plaintiff can show that evidence that defendant intended to discriminate between its male and female Sales Representatives or that defendant's legitimate non-discriminatory reason for the disparity in pay between male and female Sales Representatives is unworthy of credence, so that a reasonable jury could find that

defendant "is dissembling to cover up a discriminatory purpose." *Reeves*, 530 U.S. at 147.

Joiner testified that he decided to pay a 10% commission to the female Sales Representatives in the In-House Division, instead of the 15% commission paid to Adair and Wilson, the male Sales Representatives in the School Division, because:

1. School Division Sales Representatives had quotas and In-House Sales Representatives did not;

2. School Division Sales Representatives were required to cover certain expenses, such as telephones, utilities, and equipment, and In-House Sales Representatives were not;

3. School Division Sales Representatives worked on the road and regularly stayed overnight and the In-House Sales Representatives spent most of their time working in defendant's office;

4. School Division Sales Representatives had requirements to make a certain number of direct calls, and In-House Sales Representatives did not have set requirements;

5. School Division Sales Representatives typically worked more than 40 hours per week, and In-House Sales Representatives normally worked a 40-hour week.

(Doc. 20 at 89-90.)

In her Brief in Opposition to Defendant's Motion for Summary Judgment, plaintiff argues:

The resolution of the factual issues is inappropriate at the summary judgment stage. It is for the jury. [Defendant] relies on its EPA defenses as part of its defense to the Title VII claim. If the jury rejects those defenses from a factual standpoint, then the jury might reasonably conclude that the real reason for the pay disparity was intentional sex discrimination.

14

> The case law makes it clear that the Court will not decide disputed factual issues such as those presented by [defendant's] affirmative defenses.

(Pl. Br. In Opp. to Mot. for Summ. J. at 6 (citing, *inter alia*, *Harris v. Shelby County Board of Education*, 99 F.3d 1078, 1084 (11th Cir. 1996)) (internal citations and footnote omitted).)

Plaintiff may establish that defendant's articulated reason is a pretext for discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989)(quoting *Goldstein v. Manhattan Industries*, 758 F.2d 1435, 1445 (11th Cir.)(citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)), *cert. denied* 474 U.S. 1005 (1985)). If a plaintiff chooses to establish pretext by showing that her employer's proffered reason is unworthy of credence, she must attack that reason "head on and rebut it." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000). That is, a plaintiff must offer ***evidence*** that "casts sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)(quoting *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994)), *cert. denied sub. nom Combs v. Meadowcraft Co.*, 522 U.S. 1045 (1998). The "pretext analysis focuses on a narrow question: Would the proffered ***evidence*** allow a reasonable factfinder to conclude that the articulated reason for the decision

15

was not the real reason?" *Walker v. Prudential Property and Casualty Insurance*, 286 F.3d 1270, 1276 (11th Cir. 2002)(internal citations omitted and emphasis added).

Plaintiff has not pointed to any evidence in the record that would allow a reasonable jury to find that the articulated reasons for the difference in commission percentages between male School Division Sales Representatives and female In-House Sales Representatives are not the real reasons for the difference in the commission percentages. She has argued merely that a jury should be allowed to decide defendant's credibility. Such argument is not an adequate substitute for evidence that "casts sufficient doubt on the defendant's proffered nondiscriminatory reasons." *Combs*, 106 F.3d at 1538.

Because plaintiff has not submitted evidence sufficient to meet defendant's articulated reasons head on and rebut them, she has not established an issue of fact as to whether defendant's articulated reasons are unworthy of credence. Therefore, defendant's Motion for Summary Judgment as to plaintiff's Title VII compensation claim will be granted, and such claim will be dismissed.

## C. RETALIATORY DISCHARGE

Defendant argues:

It is the position of [defendant] that it is entitled to summary judgment on [plaintiff's] retaliation claim based upon the undisputed evidence and the law for . . . the following reasons:

a. [Plaintiff] is unable to make out a prima facie case of retaliatory discharge under Title VII due to her inability to produce substantial evidence showing that her termination was causally related to her complaints of/questions to Joiner as to whether the male sales representatives in the School Division were paid differently; and/or

16

> b.  Even if [plaintiff] does establish a prima facie case, then because
> [defendant] has met its burden of producing evidence of non-retaliatory
> reasons for her termination, the burden of production has shifted back
> to [plaintiff] such that she is now required to produce evidence from
> which a reasonable trier of fact could conclude that a discriminatory
> intent more likely than not formed the basis for her termination and that
> each of [defendant's] [proffered] reasons for terminating her are
> pretextual, which evidence [plaintiff] is unable to produce.

(Def. Br. in Supp. of Mot. for Summ. J. at 17.)

Plaintiff claims that she was terminated because she complained of discrimination with regard to her pay.  The record, viewed in the light most favorable to plaintiff, shows that Joiner threatened to terminate plaintiff if she asked him one more time about disparate pay between male and female Sales Representatives and that he decided to terminate plaintiff after she asked him about her pay one more time.

Defendant argues, "[Plaintiff] is unable to make out a prima facie case of retaliatory discharge under Title VII due to her inability to produce substantial  evidence showing that her termination was casually related to her complaints of/questions to Joiner as to whether the male sales representatives in the School Division were paid differently."  (Def. Br. in Supp. of Mot. for Summ. J. at 17.)  "To establish a causal connection, a plaintiff must show that 'the decision-maker[s] [were] aware of the protected conduct,' and 'that the protected activity and the adverse action were not wholly unrelated.'" *Gupta v. Florida Board of Regents*, 212 F.3d 571, 590 (11th Cir. 2000)(quoting *Farley v. Nationwide Mutual Insurance Co.*, 197 F.3d 1519, 1337 (11th Cir. 1999)).  Defendant does not elaborate on exactly why it contends plaintiff cannot establish a causal connection between her termination and her

complaints to Joiner regarding the alleged disparity in her pay and that of male Sales Representatives.  Indeed, the evidence shows Joiner threatened to fire her if she questioned him again about the disparity, and, after she questioned him again, she was terminated.  The court finds that this evidence is sufficient to establish a causal connection between her termination and her protected activity.

As a second ground for dismissing plaintiff's retaliation claim, defendant argues:

> Even if [plaintiff] does establish a prima facie case, then because [defendant] has met its burden of producing evidence of non-retaliatory reasons for her termination, the burden of production has shifted back to [plaintiff] such that she is now required to produce evidence from which a reasonable trier of fact could conclude that a discriminatory intent more likely than not formed the basis for her termination and that each of [defendant's] proffered reasons for terminating her are pretextual, which evidence [plaintiff] is unable to produce.

(Def. Br. in Supp. of Mot. for Summ. J. at 17.)  Defendant did not elaborate on the reasons it contends plaintiff is unable to produce evidence that its reasons for her termination are unworthy of credence.

A reasonable jury could find that Joiner threatened to fire plaintiff if she engaged in further protected activity of complaining about unequal pay, that plaintiff complained about unequal pay after Joiner's threat, and that Joiner followed through on his threat and fired plaintiff because she asked him about the pay disparity between male and female Sales Representatives.  Such an inference is sufficient to allow the jury to find that Joiner terminated plaintiff for her protected activity, and not, as defendant contends, because her numbers were down.

18

Based on the foregoing, the court finds that defendant has not established that there are no disputed facts and that it is entitled to judgment as to plaintiff's retaliation claim. Therefore, defendant's Motion for Summary Judgment as to plaintiff's retaliation claim will be denied.

## CONCLUSION

For the foregoing reasons, as to plaintiff's EPA and Title VII pay claims, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law.  However, the court finds that there are disputed issues of fact and that defendant is not entitled to judgment as a matter of law as to plaintiff's retaliation claim.  An order granting in part and denying in part defendant's Motion for Summary Judgment will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 14th day of December, 2004.

*Sharon Lovelace Blackburn*

SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE